McGraw Edison/Power System Div., Petitioner *v.*
Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Robert L. McGowan,
Respondents.

Argued October 9, 1981, before Judges ROGERS,
BLATT and CRAIG, sitting as a panel of three.

*Raymond F. Keisling, Will & Keisling,* for petitioner.

*Leonard P. Kane, Jr., Fried, Kane, Walters & Zuschlag,* for respondent, Robert L. McGowan.

OPINION BY JUDGE BLATT, January 13, 1982:

McGraw Edison Power Systems Division (employer) appeals here from an order of the Workmen's Compensation Appeal Board (Board) affirming the order of the referee granting compensation benefits to Robert L. McGowan (claimant) for loss of use of his lower left leg pursuant to Section 306(c)(5) and (25) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §513(5) and (25).

On October 10, 1955, the claimant, a mechanical assembler, sustained a work-related injury to his left knee when he slipped while draining oil from a tank on the employer's premises. He received compensation benefits thereafter until he returned to work on January 10, 1977, after which date he received partial disability compensation until October 8, 1978. On February 23, 1977, he filed a review petition and on November 21, 1978, after a hearing, the referee found that the claimant had suffered the loss of use of his lower left leg for all practical intents and purposes and awarded benefits accordingly. On December 15, 1978, the Board affirmed the referee and this appeal followed. We affirm.

Where, as here, the party with the burden of proof has prevailed below, our scope of review, and that of the Board when it take no additional evidence, is limited to determining whether or not constitutional rights were violated, an error of law was committed or whether or not any necessary finding of fact was unsupported by substantial evidence. *D. L. Clark Co. v. Workmen's Compensation Appeal Board,* 49 Pa. Commonwealth Ct. 535, 411 A.2d 1269 (1980). We must view the evidence in the light most favorable to the party who prevailed below, giving him the benefit of all inferences reasonably deductible therefrom. *Curran v. Walter E. Knipe and Sons, Inc.,* 185 Pa. Superior Ct. 540, 138 A.2d 251 (1958).

The employer asserts that the claimant has failed to meet his burden of proving that he suffered a loss of use of his left leg for all practical intents and purposes inasmuch as the record establishes that, while the claimant sustained an injury to his knee, he retains significant function and sensation in his lower left leg. The issue of whether or not an injured employee has suffered the loss of use of an extremity is, of course, a question of fact, *Gindy Manufacturing Co. v. Workmen's Compensation Appeal Board,* 32 Pa. Commonwealth Ct. 128, 378 A.2d 492 (1977), for the referee and not for this Court. *Curran.* It is the role of the referee as factfinder to determine the credibility and weight to be accorded the evidence as well as to resolve evidentiary conflicts, and in so doing he may accept or reject the testimony of any witness, including medical experts, in whole or in part. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977). If the testimony accepted constitutes substantial evidence, which is deemed to be such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion, *Katz v. Evening Bulletin,* 485 Pa. 536, 403 A.2d 518 (1979), then we are precluded from disturbing findings supported by the testimony, even in the presence of evidence to the contrary. *American Refrigerator.*

The proper test to be used under Section 306(c) is well-established:

> "The test to be applied is whether the claimant has suffered 'the permanent loss of use of the injured member for all practical intents and purposes.' This is not the same test as the 'industrial use' test although the two would often bring the same result if applied in particular cases. Generally, the 'all practical intents and purpose' test requires a more crippling injury than the 'industrial use' test in order to bring the case under Section 306(c) supra. *However it is not necessary that the injured member of the claimant be of absolutely no use in order for him to have lost the use of it for all practical intents and purposes.* (Emphasis added.)"

*Reading Tube Corp. v. Workmen's Compensation Appeal Board,* 12 Pa. Commonwealth Ct. 45, 47, 315 A.2d 678, 679 (1974) (quoting *Curran,* 185 Pa. Superior Ct. at 547, 138 A.2d at 255).

The claimant's medical witness, Dr. Eric Minde, a physician board-certified in physical medicine and rehabilitation, testified that the claimant had, for all practical intents and purposes, sustained "the loss of use—which I often state as 50 percent of the left lower extremity, but which can properly be stated as loss of use of the left lower leg." He attributed the condition to the claimant's injury of October 10, 1975 and opined that it was "in all likelihood a permanent condition." He stated that "he really has nothing to be offered him at this point, and I do not think

time itself will heal it much more either. He has a very bad internal derangement, and no surgical procedures are indicated and no medical treatment, aside from medicine.'' In discussing the tendency of the claimant's knee to ''give out,'' thereby causing him to fall, the physician indicated that there was ''a lack of full stability of the knee, plus . . . a lack of musculature above the knee, plus he has different, painful phenomena in the knee which cause him to seek a more comfortable position which is usually a less stable one.'' He testified that use of the *leg* would be restricted by:

Most anything that requires stressful forces of the knee. This would include squatting, kneeling, climbing, walking on uneven ground, walking up hills, walking on stairs, also, walking for any length of time, prolonged standing, and any other thing that would cause stressful forces on the knees, such as prolonged lifting activities where he would have to bend partially or standing on surfaces, specifically cold or warm or uncomfortable in that fashion as he would not be able to adjust himself, as standing on an uncomfortable surface, as persons with two knees could.

While the referee might have found that the claimant did not lose the use of his lower left leg for all practical intents and purposes, ''there is substantial evidence to support a finding that he did so lose the use of his . . . [lower left leg], thereby satisfying the requirements of Section 306(c) and of Curran, supra.'' *Reading Tube,* 12 Pa. Commonwealth Ct. at 47-8, 315 A.2d at 679.

The employer asserts that the degree of uselessness required in a loss-of-use case is that the limb was injured to such a severe extent that, in terms of func-

tion remaining, it might as well have been amputated. Such, however, is not the law. "[T]he standard of the law is not complete loss but loss for 'all practical intents and purposes.' Other evidence, as we have said, supports the finding that this claimant lost his . . . [lower left leg] by the law's standard." *Gindy Manufacturing,* 32 Pa. Commonwealth Ct. at 133, 378 A.2d at 495.

The employer further argues that, inasmuch as the claimant never sought to establish any relationship between his knee injury and his inability to work, he thereby failed to meet his burden of proving the requisite loss of use. As noted earlier, the appropriate test in a Section 306(c) action is not an "industrial use" test but rather the "all practical intents and purposes" test, and to meet the requirements of the later test it is not necessary that the injured member be of absolutely no use. *Curran.* "It is also possible to have suffered the permanent loss of use of the leg and not be totally disabled." *Curran,* 185 Pa. Superior Ct. at 544, 138 A.2d at 254.

The Court is not permitted to weigh the evidence or substitute its findings for those of the referee which are supported by substantial evidence. In the presence of such substantial evidence, therefore, we affirm the order of the Board which affirms the order of the referee below.

### Order

And Now, this 13th day of January, 1982, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed;

And it is Further Ordered that judgment be entered in favor of the claimant, Robert L. McGowan, and against McGraw Edison, Power Systems Division, self-insured, at the rate of $157.16 per week, for a period of 350 weeks plus a 25 week healing period,

beginning December 10, 1975 and continuing through February 15, 1983 inclusive, in the total amount of $58,935.00.

McGraw Edison, Power Systems Division, self-insured, is directed to take credit against the aforementioned award for compensation already paid the claimant in the total amount of $11,177.57.

Interest is payable on deferred payments of compensation at the rate of ten percentum per annum pursuant to Section 406.1 of the Act.

All disability resulting from the October 10, 1975 injury shall cease and terminate on February 16, 1983.

McGraw Edison, Power Systems Division, self-insured, is further directed to reimburse the claimant $35.00 and his counsel $293.60 for the following reasonable costs incurred:

Dr. Eric Minde
    examination and report .......... $ 35.00
Dr. Eric Minde
    x-rays ........................ $ 15.00
    appearance and testimony ........ $125.00
Susan C. Thoma, Reporter
    Dr. Minde's deposition ........... $ 76.00
Adelman Reporters
    Dr. Thomas W. Cowan's deposition $ 30.60
    hearing transcript ............... $ 29.00
St. Clair Hospital
    hospital records ................. $ 9.00
Washington Hospital
    hospital records ................. $ 9.00

Attorney fees, as agreed upon between the claimant and his counsel, in the amount of $5,002.17 are approved and the McGraw-Edison, Power Systems Division, self-insured, is directed to deduct ten (10)

percent from the deferred compensation due the claimant and an additional ten (10) percent from each subsequent week of compensation which becomes due and payable to the claimant and forward it, together with the aforementioned costs of $293.60 directly to:

Leonard P. Kane, Jr., Esq.
Suite 640, Two Gateway Center
Pittsburgh, PA 15222

All remaining payments of compensation and interest, and the aforementioned costs of $35.00, shall be paid by bank draft issued in the name of the claimant and mailed directly to his address.

This decision was reached prior to the expiration of the term of office of Judge PALLADINO.