524 A.2d 1080

Babcock & Wilcox and Insurance Company of North America, Petitioners *v.* Workmen's Compensation Appeal Board (Phillips), Respondents.

Argued March 27, 1987, before Judges CRAIG and BARRY, and Senior Judge NARICK, sitting as a panel of three.

*Raymond F. Keisling, Will, Keisling, Ganassi & McCloskey,* for petitioners.

*Samuel S. Blaufeld,* with him, *Pamela M. Schiller,* for respondent.

OPINION BY JUDGE CRAIG, April 30, 1987:

Babcock & Wilcox, the employer, and the Insurance Company of North America appeal from an order of the Workmen's Compensation Appeal Board granting workmen's compensation to Stanley Phillips, the claimant, for the specific loss of his hearing. We affirm.

According to the referee's findings of fact, Babcock & Wilcox employed the claimant as an electrician from 1968 until September 1, 1982. With the exception of the last few months of his employment, the claimant's working conditions involved continuous loud noises. On the basis of expert medical testimony concerning the claimant's hearing loss, the referee awarded specific loss compensation.

Our scope of review is limited to a determination of whether the board committed an error of law and whether the findings of fact are supported by substantial evidence in the record. *Estate of Francis J. McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

In *Pare v. Workmen's Compensation Appeal Board (Fred S. James and Co. of Pennsylvania),* 97 Pa. Commonwealth Ct. 435, 509 A.2d 1361 (1986), we held that a claimant must demonstrate that he suffered a complete loss of hearing for all practical intents and purposes to establish a specific loss of hearing.

The referee's crucial findings of fact are as follows:

13. That at the present time the claimant's hearing problems have progressed to the point that he can no longer use his sense of hearing in the manner that nature intended. He cannot hear or understand conversation on the telephone, cannot hear or understand the audio por-

tion of the television without turning the amplification up to the point where it disturbs other family members and cannot hear and understand conversation at social or public gatherings. In essence he cannot carry on a conversation with another individual unless it is on a one to one, face to face basis in a relatively quiet environment.

. . . .

17. That the testimony and opinions rendered by Dr. Froman are convincing, competent and credible and will be relied on, in part, in reaching a final determination in this case.

18. That your Referee, based on the unrebutted testimony of the claimant and the testimony and opinions rendered by Dr. Froman, believes and accordingly finds that the claimant as a result of his exposure to the hazard of loud noises during the course of his employment with the defendant from 1968 through approximately July 1, 1982, can no longer use his sense of hearing in the manner that nature intended and had lost the use of hearing in both ears for all practical intents and purposes.

Considered in isolation, the described testimony of Dr. Froman—specifically, his unequivocal opinion that the claimant's hearing had been lost for all intents and purposes—provides substantial evidence to support the referee's findings.

However, the employer stresses the point that the statutory provision governing the specific loss of hearing uses the adjective "complete," as follows:

**§513. Schedule of compensation for disability from permanent injuries of certain classes**

For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows:

. . . .

(8) For the *complete* loss of hearing, in both ears, sixty-six and two-thirds per centum of wages during two hundred sixty weeks; for complete loss of hearing in one ear, sixty-six and two-thirds per centum of wages during sixty weeks.

Section 306(c)(8) of The Pennsylvania Workmen's Compensation Act, 77 P.S. §513(8) (emphasis added).[1]

The employer contends that Dr. Froman's testimony—that the claimant's hearing had been lost for all practical intents and purposes—does not constitute substantial evidence to support the referee's findings because Dr. Froman also testified that the claimant suffered only a 16.6% hearing impairment.[2]

Thus, the employer poses the question: Could a claimant suffer a "complete loss of hearing" under the terms of the workmen's compensation statute if audiologic testing registers only a low percentage hearing impairment for that claimant?

The Pennsylvania Supreme Court's understanding of the statutory standard controls our resolution of this issue. That court has rejected a precise or absolute percentage standard of auditory loss in favor of a realistic relative measure by stating:

'If the words [complete loss of hearing] . . . are taken relatively rather than absolutely, and in the light of everyday experiences, rather than from the viewpoint of a literal clinician, then this precise means of measuring the extent of a hearing loss in percentiles becomes unacceptable. In this relative context a person, even though he is able to hear loud, pure tones, is completely be-

---

[1] Act of June 2, 1915, P.L. 736, *as amended*.

[2] Dr. Froman's hearing impairment calculations were based on 1979 standards published by the American Academy of Ophthalmology and Otolaryngology.

reft of his hearing if he is unable to communicate with his fellow man and is denied those other practical and useful benefits generally associated with man's usual and customary wants, needs, and pleasures.'

*Workmen's Compensation Appeal Board v. Hartlieb,* 465 Pa. 249, 255, 348 A.2d 746, 749 (1976), *quoting Pilkanis v. Leesona Corporation,* 101 R.I. 494, 224 A.2d 893 (1966).

In this case, Dr. Froman's cross-examination testimony supports the rationality of that approach. He explained the preeminence of meaningful subjective criteria over the narrower import of the audiologic test data as follows:

Q    Okay. Now you have testified numerous times and even in one case where there was 1% percent impairment under the AAOO, that the person had lost his hearing totally for all practical intents and purposes to be used in the manner in which nature had intended.

Now what does that phrase or that standard mean to you?

A    The meaning of that phrase to me depends upon—it varies depending upon the particular patient; how he functions in his everyday life and what subjective difficulties the patient tells me his hearing loss causes him in his everyday life. . . . If a patient with similar audiologic testing told me that his hearing caused him absolutely no difficulties in his everyday life, that he was not even aware of any significant problems, then in my mind for that patient, that patient irrespective of what my audiogram showed had not suffered a loss of use of hearing for all practical intents and purposes for that patient.

However, when the patient cites to me multiple examples where he finds that his hearing loss affects him in his everyday life and these are situations where I feel if it had not been for the patient's exposure to loud noise, he would be able to function totally normally as other people with normal hearing do, and if I have audiologic test data that corroborates or coincides well with the degree of difficulty that the patient states he is having, then that fits my definition for that patient of having suffered loss of use of hearing for all practical intents and purposes.

Thus, Dr. Froman's interpretation of the phrase "complete loss of hearing" is consistent with the approach of the Supreme Court in *Hartlieb*. We cannot therefore hold that Dr. Froman's reliance on subjective criteria, rather than the audiologic test data, in concluding that the claimant suffered a complete hearing loss, led to an erroneous conclusion.

Accordingly, we affirm.

### ORDER

Now, April 30, 1987, the order of the Workmen's Compensation Appeal Board, No. A-89449, dated March 20, 1986, is affirmed.